UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

S.J.W. a minor, by TRISHAUNA WALSH,

                              Plaintiff,                    1:16-CV-1413
                                                           (GTS/WBC)
v.

COMMISSIONER OF SOCIAL SECURITY

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LEGAL AID SOCIETY                             MARY MARTHA WITHINGTON,
OF NORTHEASTERN NY                            ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                   KATHRYN S. POLLACK, ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 14.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Trishauna Walsh

("Plaintiff") on behalf of a minor, S.J.W. ("Claimant") against the Commissioner of Social

Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are the

parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 10, 13.)  For the reasons set forth below, it is ordered that Plaintiff's motion be denied and Defendant's motion be granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Claimant was born in 2004, at the time of filing Claimant was a preschooler and at the time of the hearing he was a school-age child.  20 C.F.R. § 416.926a(g)(2).  Claimant's alleged disability consists of a hearing impairment.  (T. 152.)

### B.    Procedural History

On November 25, 2009, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on Claimant's behalf.  (T. 84.)  Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On January 25, 2011, and again on March 30, 2011, Plaintiff and Claimant appeared before the ALJ, Carl E. Stephan.  (T. 59-67, 68-83.)  On April 25, 2011, ALJ Stephan issued a written decision finding Claimant not disabled under the Social Security Act.  (T. 37-58.)  On April 3, 2012, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court, and on March 25, 2014 this Court issued a Decision and Order reversing the unfavorable decision and remanding the matter for further administrative proceedings.  By Notice of Order of Appeals Council Remanding Case to the ALJ and Order of Appeals Council, dated September 10, 2014, the matter was remanded.  (T. 485-487.)  On June 2, 2015, Plaintiff and Claimant appeared before ALJ

Stephan.  (T. 394-415.)  On August 13, 2015, ALJ Stephan issued a written decision finding Claimant not disabled under the Social Security Act.  (T. 370-393.)  On September 16, 2016, the AC denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 364-369.)  Thereafter, Plaintiff timely sought judicial review in this Court.

> ### C.  The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  First, the ALJ found that Claimant was a "preschooler" at the time of filing and a "school-age child" at the time of the hearing pursuant to 20 C.F.R. § 416.926a(g)(2).  (T. 376.)  Second, the ALJ found that Claimant had not engaged in substantial gainful activity since the application date.  (*Id.*)  Third, the ALJ found that Claimant suffered from the severe impairments of bilateral moderately severe hearing loss, and speech and language delays.  (*Id.*)  Fourth, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I ("the Listings").  (*Id.*)  Fifth, the ALJ found that Claimant did not have an impairment or combination of impairments that functionally equaled an impairment set forth in the Listings.  (T. 377-388.)  Sixth, and finally, the ALJ concluded Claimant had not been disabled, as defined by the Social Security Act, since November 25, 2009, the date his application was filed.  (T. 388.)

## II.    THE PARTIES' BRIEFINGS

> ### A.    Plaintiff's Arguments

Generally, in support of her motion for judgment on the pleadings, Plaintiff makes three arguments. First, Plaintiff argues the ALJ committed reversible error in failing to find Plaintiff's hearing disorder resulted in a marked limitation in Plaintiff's speech and language necessary to equal Listing § 102.10(B)(3). (Dkt. No. 10 at 15-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ committed reversible error in failing to find Plaintiff had a marked limitation in the domains of: acquiring and using information; attending and completing tasks; and interacting and relating with others. (*Id.* at 18-20.) Third, and lastly, Plaintiff argues the decision of the ALJ was against the substantial weight of the evidence and was incorrect as a matter of law. (*Id.* at 20-22.)

### B.    Defendant's Argument

Generally, in support of her cross-motion for judgment on the pleadings, Defendant makes three arguments. Defendant argues the ALJ reasonably found that Claimant did not meet his burden of establishing that his hearing disorder met the requirements of Listing § 102.10. (Dkt. No. 13 at 5-8 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ reasonably concluded that Claimant's impairments did not functionally equal a listed impairment. (*Id.* at 8-15.) Third, Defendant argues the ALJ properly considered Plaintiff's testimony. (*Id.* at 15-16.) Fourth, and lastly, Defendant argues an award of benefits was not warranted. (*Id.* at 16-17.)

## III.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were

not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of eighteen (18) is disabled, and thus eligible for SSI benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of [eighteen] who engages in substantial gainful activity...." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to be employed in determining whether a child can meet the statutory definition of disability. *See* 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, No. 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003).

The first step of the test, which bears some similarity to the familiar five-step analysis employed in adult disability cases, requires a determination of whether the child has engaged in substantial gainful activity. *See* 20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488. If so, then both statutorily and by regulation the child is ineligible for SSI benefits. *See* 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test next requires examination of whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe, in that they cause more than a minimal functional limitation. *See* 20 C.F.R. §

416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In

essence, "a child is [disabled under the Social Security Act] if his impairment is as

severe as one that would prevent an adult from working."  *Zebley v. Sullivan*, 493 U.S.

521, 529, 110 S. Ct. 885, 890 (1990).

     If the existence of a severe impairment is discerned, the agency must then

determine, at the third step, whether it meets or equals a presumptively disabling

condition identified in the listing of impairments set forth under 20 C.F.R. Pt. 404, Subpt.

P., App. 1 (the "Listings").  *Id.*  Equivalence to a listing can be either medical or

functional.  *See* 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003

WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or

functionally equivalent to, a listed disability and the twelve-month durational requirement

is satisfied, the child will be deemed disabled.  *See* 20 C.F.R. § 416.924(d)(1); *Ramos*,

2003 WL 21032012, at *8.

     Analysis of functionality is informed by consideration of how a child functions in

six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL

21032012, at *8.  The domains are described as "broad areas of functioning intended to

capture all of what a child can or cannot do."  20 C.F.R. § 416.926a(b)(1).  Those

domains include: (i) [a]cquiring and using information; (ii) [a]ttending and completing

tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating

objects; (v) [c]aring for [oneself]; and (vi) [h]ealth and physical well-being.  *See id.*

     Functional equivalence is established in the event of a finding of an "extreme"

limitation, meaning "more than marked," in a single domain.  20 C.F.R. § 416.926a(a);

*Ramos*, 2003 WL 21032012, at *8.  An "extreme limitation" is an impairment which

"interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(I).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains.  20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8.  A "marked limitation" exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV.    ANALYSIS

### A.  Listing § 102.10: Hearing Loss Not Treated with Cochlear Implantation

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one the listed impairments in 20 C.F.R. Part 404, Subpt. P, App'x 1.  (T. 376.)  The ALJ specifically examined Listing § 102.10.  (T. 376-377.)  In making his determination the ALJ relied on audiology testing performed by John Cervera, M.D., speech and language evaluations performed by consultative examiner, Dawn Grasso-Mergyeri, M.S., CCC-SLP, speech and language evaluations performed by Plaintiff's treating speech pathologist, Alison Guerin, M.S., CCC-SLP, and audiometry testing by treating audiologist Erin Winderl, Au.D.  (T. 376-377.)

Plaintiff concedes that Claimant's impairment did not meet the requirements of Listing § 102.10. (Dkt. No.10 at 15 [Pl.'s Mem. of Law].) Plaintiff argues that the ALJ should have found that Claimant's impairments medically equaled the requirements of Listing § 102.10(B)(3). Plaintiff asserts that the evidence of record established a severe speech and language delay and borderline intellectual functioning "sufficient to reach a finding of disability." (*Id.* at 15-16.)

Listing § 102.10(B)(3) requires that a child exhibit "[a]n average air conduction hearing threshold of 50 decibels or greater in the better ear." *See* 20 C.F.R. Part 404, Suppart P, App'x 1, Sec. 102.10(B)(3). As stated by the ALJ, Claimant's audiometry testing did not show the air conduction values required by the Listing. (T. 377; *see* T. 288, 362-363, 685-688, 755-756, 856-857, 872-874.)

There are three separate ways by which a claimant may establish that his impairment is medically equivalent to a listed impairment. 20 C.F.R. § 416.926(b). First, a claimant who has an impairment described in the listed impairments, but "do[es] not exhibit one or more findings specified in the particular listing, or ... [does] exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing," may establish medical equivalence by demonstrating other findings related to his impairment "that are at least of equal medical significance to the required criteria" of the listed impairment. *Id.* § 416.926(b)(1). Second, a claimant who has an impairment not described in the listed impairments may establish medical equivalence by demonstrating findings related to his impairment that "are at least of equal medical significance" to those of a "closely analogous listed impairment[ ]." *Id.* § 416.926(b)(2). Third, a claimant who has a combination of impairments, none of which are described in

the listed impairments, may establish medical equivalence by demonstrating findings related to his combination of impairments that "are at least of equal medical significance to those of a[n] [analogous] listed impairment.  *Id.* § 416.926(b)(3).

However, Plaintiff fails to establish that S.J.W.'s impairment, or combination of impairments, medically equaled the requirements of the Listing.  In support of her argument, Plaintiff asserts that the ALJ erred in affording weight to the opinion of State agency medical consultant, M. Fuhrman; erred in affording "any weight" to Dr. Gussoff, erred in failing to seek clarification from Dr. Merecki; and erred in evaluating the credibility of Plaintiff.  However, the ALJ did not rely on the medical opinions of Drs. Fuhrman, Gussoff or Merecki in making his determination that Claimant's impairment, or impairments, did not meet or equal the Listing.  As outlined herein, the ALJ relied on testing performed by Drs. Cevera and Winderl, and speech language pathologists Guerin and Megyeri.  As stated by Defendant, Plaintiff essentially makes the argument that Claimant's impairments functionally equals the severity of the Listings, which will be discussed below.

The ALJ's determination, that Plaintiff's impairment or combination of impairments did not meet or medically equal a listed impairment was supported by substantial evidence in the record.  Although Plaintiff asserts that "[t]he subtleties of considering a child claimant's impairments in combination need to be left to the true medical experts in the field of pediatric audiology and childhood development," whether a claimant's impairment(s) meets or equals a listing is a determination reserved to the ALJ.  20 C.F.R. § 416.927(d)(2).  Further, Plaintiff failed to establish that Claimant's

impairments met the criteria outlined in 20 C.F.R. § 416.926(b).  Here, the ALJ relied on objective medical evidence in the record to support his determination.

Indeed, as stated herein, auditory testing performed by various sources did not show values required by the Listing.  The ALJ further relied on testing which concluded Claimant had mild articulation delay, but his expressive language skills were within normal limits.  (T. 377, *see* T. 285.)  The ALJ relied on testing performed by Dr. Cervera, Ms. Guerin, and Ms. Megyeri that indicated S.J.W. did not have a marked limitation in speech or language as outlined in the Listings.  (T. 376-377; *see* Listing 102.00(B)(5).)[1]

The ALJ properly determined that Claimant's impairments, or combination of impairments, did not meet or equal a Listing.  The ALJ cited specific objective evidence in the record to support his determination.  Therefore, it is recommended that the ALJ's determination at this step be upheld.

## B.  Weight Afforded to Source Opinions in the Record

Plaintiff argues the ALJ erred in affording weight to various medical opinions in the record.  First, Plaintiff asserts that the ALJ erred in affording any weight to the

---

[1]  a. We will consider you to have a marked limitation in speech if:
(i) Entire phrases or sentences in your conversation are intelligible to unfamiliar listeners at least 50 percent (half) of the time but no more than 67 percent (two-thirds) of the time on your first attempt; and
(ii) Your sound production or phonological patterns (the ways in which you combine speech sounds) are atypical for your age.
b. We will consider you to have a marked limitation in language when your current and valid test score on an appropriate comprehensive, standardized test of overall language functioning is at least two standard deviations below the mean. In addition, the evidence of your daily communication functioning must be consistent with your test score. If you are not fluent in English, it may not be possible to test your language performance. If we cannot test your language performance, your hearing loss cannot meet 102.10B3. Instead, we will consider the facts of your case to determine whether your hearing loss medically equals 102.10B3.
20 C.F.R. Part 404, Suppart P, App'x 1, Sec. 102.10(B)(3)

opinion of non-examining State agency medical consultant, Dr. Fuhrman because he did not examine Claimant and did not review Plaintiff's testimony.  (Dkt. No. 10 at 16 [Pl.'s Mem. of Law].)  Second, Plaintiff asserts the ALJ erred in affording any weight to the opinion of Dr. Gussoff that Claimant did not meet or equal a Listing because he was neither an audiologist nor a pediatrician.  (*Id.* at 16-17.)  Third, Plaintiff asserts the ALJ erred in failing to seek clarification from Dr. Merecki regarding the lack of explanations provided on his medical source statement.  (*Id.* at 17.)

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6)[2].

As an initial matter, the ALJ did not, as a matter of law, err in affording weight to the opinions of examining and non-examining medical consultants.  The Court of Appeals for the Second Circuit has continuously held that an ALJ may afford greater weight to opinions of consultative examiners, including medical experts, than treating sources.  *See Lewis v. Colvin*, 122 F. Supp. 3d 1, at 7 (N.D.N.Y. 2015) (citing *Delgrosso v. Colvin*, 2015 WL 3915944, at *4 (N.D.N.Y. June 25, 2015); *see also Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *Monette v. Colvin,* 654 F. App'x 516 (2d Cir. 2016); *Snyder v. Colvin,* No. 15-3502, 667 F. App'x 319 (2d Cir. 2016).

---

[2]      Effective March 27, 2017, 20 C.F.R. § 416.927 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

Further, although the ALJ afforded weight to the consultative examiners, the ALJ afforded significant weight and great weight to Claimant's treating physician, Dr. Merecki; significant weight to Claimant's teacher, Ms. Scott[3]; great weight to Claimant's Individualized Education Program ("IEP"); controlling weight to Claimant's treating speech pathologists, Ms. Moryl and Ms. Guerin; great weight to Claimant's school psychologist, and Ms. Kernan; and little weight to Ms. Grasso-Megyeri.  (T. 378-379.) The ALJ afforded no weight to Dr. Gussoff's initial report because he was incorrectly provided an adult disability evaluation, and significant (but not great) weight to his childhood disability evaluation.  (T. 379.)  The ALJ also afforded Dr. Fuhrman significant weight, but noted that his findings were not entirely supported by the record.  (*Id.*) Overall, the ALJ afforded more weight, and relied heavily, on the opinions of Claimant's treating providers.  Therefore, for the reasons stated herein, and further outlined in Defendants brief (Dkt. No. 13 at 12-14 [Def.'s Mem. of Law]), it is recommended that the weight afforded to the various opinions in the record be upheld.

### C.  The Domain of Acquiring and Using Information

The domain of acquiring and using information focuses on how well a child acquires, learns, and uses information.  20 C.F.R. § 416.926a(g).  A preschooler, like Claimant at the time of his application, should begin to learn and use skills that will help him to read and write and do arithmetic when he is older.  *Id.* at § 416.926a(g)(iii).  A school aged child, like Claimant at the time of the hearing, should be able to read, write, and do math, and discuss history and science.  *Id.* at § 416.926a(g)(iv).  Examples of limited functioning in this domain include: not understanding of words about space, size,

---

[3]    The ALJ concluded that Claimant had greater limitations in some domains than estimated by Ms. Scott.  (T. 378.)

or time; an inability to rhyme words or the sounds in words; difficulty recalling important things you learned in school yesterday; difficulty solving mathematics questions or computing arithmetic answers; and talking only in short, simple sentences and having difficulty explaining meaning.  *Id.* at § 416.926a(g)(3)(i)-(v).

The ALJ determined that Claimant had less than marked limitations in acquiring and using information.  (T. 381.)  In making his determination, the ALJ relied on Dr. Merechi's January 2010 medical source statement indicating Claimant's cognitive functioning was "age appropriate" and his March 2010 statement that Claimant had "mild" limitations in this domain.  (*Id.*, *referring to* T. 278, 299.)  The ALJ further relied on teacher Ms. Scott's assessment that Claimant did not have any serious or very serious problems performing activities associated with this domain.  (*Id.*, *referring to* T. 161.)  Dr. Fuhrman assessed that Claimant had less than marked limitations in this domain.  (*Id.*, *referring to* T. 294.)  The ALJ further relied on intelligence testing by Ms. Kernan.  (T. 381, *referring to* T. 726.)  In addition, Dr. Gussoff opined Claimant had less than marked limitations in this domain.  (T. 847.)

Plaintiff argues the ALJ failed to properly examine how much extra help Claimant needed and the effects of his structured and supportive setting, specifically his "extensive special education setting."  (Dkt. No. 10 at 18 [Pl.'s Mem. of Law].)  Plaintiff further asserts that Claimant's language skills rendered him at the marked level of functional impairment in this domain.  (*Id.* at 19-20.)  The ALJ acknowledged that Claimant received accommodations in his educational setting.  (T. 381.)  Indeed, Claimant had an FM system for hearing assistance, sat in the front of the classroom, had reduced amounts of homework, and had an aide to assist him in and out of the

classroom.  (*Id.*)  However, Plaintiff fails to point to evidence in the record to support her argument that the accommodations Claimant received warrant a marked limitation in this domain.

Under the Regulations, "[t]he fact that [a claimant] attend[s] school does not mean that [he is] not disabled [and] the fact that [a claimant does or does not] receive special education services does not, in itself, establish [his] actual limitations or abilities."  20 C.F.R. § 416.924a(b)(7)(iv).  The ALJ took into consideration Claimant's accommodations at school and his language skills, and ultimately determined that he had less than marked limitations in this domain based on the evidence outlined above.

Plaintiff asserts test results from Claimant's Clinical Evaluation of Language Fundamentals-IV ("CELF-4")[4] test conducted in October of 2010 and October of 2013 warrant a finding of marked limitation in this domain.  (Dkt. No. 10 at 19 [Pl.'s Mem. of Law].)  In October of 2010, Claimant's subtests scores for the CELF-4 tests were in the 2nd to 91st percentile.  (T. 217.)  In October 2013, Claimant's subtest scores for the CELF-4 tests were in the 2nd to 25th percentile.  (T. 738.)  In 2013, Claimant's "expressive language" score was in the 1st percentile.  (*Id.*)

The Regulations at 20 C.F.R. § 416.926a(e)(2)(iii) provide that a claimant will be found to have a " 'marked' limitation when [the cliamant has] a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain," and if the child's "day-to-day functioning in domain-related activities is

---

[4]    "CELF-4 provides a measure of a student's general language ability.  The presence of absence of a disability is reflected in the Core Language Score.  The test also provides further information about receptive and expressive language and other modality specific language abilities that are reflected in the Index scores."  (T. 216.)

consistent with that score." Therefore, although a test score might meet the requirements of the Regulation, the claimant must still demonstrate that his day to day functioning in domain related activates is consistent with the score. Further, a test score alone is not dispositive of a marked or extreme limitation. *Id.* at § 416.926a(e)(4)(i) (an ALJ "will not rely on any test score alone[,] [n]o single piece of information taken in isolation can establish whether you have a marked or an extreme limitation in a domain").

The Court of Appeals for the Second Circuit has stated that:

[e]ven assuming that the CELF-4 test must be treated as a comprehensive standardized test in this domain, it does not follow that [claimant] was disabled. In order to meet the standard in the regulation, a child must also demonstrate that his "day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(iii). In this vein, the same evidence that provided support for the ALJ's decision that [claimant] did not have a marked limitation in the domain of interacting and relating with others serves as a basis for showing that [claimant's] "day-to-day functioning in domain-related activities" was inconsistent with a marked limitation in the domain under 20 C.F.R. § 416.926a(e)(2)(iii).

*Miles ex rel. J.M. v. Astrue*, 502 F. App'x 59, 61 (2d Cir. 2012).

Substantial evidence in the record supported the ALJ's determination in this domain. As outlined above, the ALJ relied on the opinions of Dr. Merecki, Ms. Scott, Dr. Gussoff, and Dr. Fuhrman that Claimant's day to day level of functioning in this domain was less than marked despite limitations. Although Claimant's test scores may support a finding of a marked limitation in this domain the ALJ noted his day to day functioning was not consistent with marked limitations. The ALJ's determination that Claimant had less than marked limitation was supported by substantial evidence in the record as outlined above. *See A.R.B. by Brink v. Comm'r of Soc. Sec.*, No. 1:16-CV-0577, at *5 (GTS/WBC), 2017 WL 1957013, at *5 (N.D.N.Y. May 10, 2017) (although claimant had

test scores that may support a finding of an extreme limitation, the ALJ's determination

that claimant had a less than marked limitation was supported by substantial evidence

in the record).  Therefore, it is recommended that the ALJ's determination that Claimant

had less than marked limitations in the domain of acquiring and using information be

upheld.

### D.  The Domain of Attending and Completing Tasks

The domain of attending and completing tasks considers how well a claimant is

able to focus and maintain attention, how well he begins, carries through, and finishes

activities, including the pace at which he performs activities and the ease with which he

can change them.  20 C.F.R. § 416.926a(h).  A preschooler should be able to pay

attention when spoken to directly, sustain attention to play and learning activities, and

concentrate on activities like putting puzzles together or completing art projects; should

also be able to focus long enough to do many more things independently; should

usually be able to wait his turn and to change his activity when a caregiver or teacher

says it is time to do something else.  *Id.* at § 416.926a(h)(iii).  A school aged child

should be able to focus his attention in a variety of situations in order to follow

directions, remember and organize his school materials, and complete classroom and

homework assignments; concentrate on details and not make careless mistakes in his

work; should be able to change activities or routines without distracting himself or

others, and stay on task and in place when appropriate; sustain attention well enough to

participate in group sports, read by himself, and complete family chores; complete a

transition task without extra reminders and accommodation.  *Id.* at § 416.926a(h)(iv).

Examples of limitations in this domain include: being easily startled, distracted, or

overreactive to sounds, sights, movements, or touch; slow to focus on, or fail to complete activities of interest; repeatedly become sidetracked from activities or frequently interrupt others; easily frustrated and giving up on tasks, including ones capable of being completed; and requiring extra supervision to keep engaged in an activity.  *Id.* at § 416.926a(h)(3)(i)-(v).

The ALJ determined that Claimant had less than marked limitations in the domain of attending and completing tasks.  (T. 381.)  In making his determination, the ALJ relied on Ms. Scott's opinion that Claimant was functioning at an age-appropriate level in this domain, with "slight" problems with refocusing to task and carrying our multi-step instructions.  (T. 382, *referring to* T. 162.)  The ALJ relied on Dr. Merechi's opinion that Claimant had no difficulty attending to and completing tasks.  (*Id.*, *referring to* T. 299.)  The ALJ further relied on Claimant's IEP report which state he "works very hard in small group and [is] helpful to others. [. . . ] [He] enjoys math and works hard and careful in his computations.  He successfully uses strategies while adding and subtracting single digit numbers."  (*Id.*, *referring to* T. 623.)  The ALJ relied on the observation of Ms. Guerin that Claimant needed, on occasion, redirection and had difficulty following multi-step instructions, but was "easily redirected."  (*Id.*, *referring to* T. 218.)  Lastly, the ALJ relied on the opinions of Drs. Gussoff and Fuhrman.  (*Id.*)  Dr. Gussoff indicated Claimant had less than marked limitation in his domain as did Dr. Fuhrman.  (T. 294, 847.)

Plaintiff again asserts that Claimant's school accommodations support greater limitations in this domain.  (Dkt. No.10 at 19 [Pl.'s Mem. of Law].)  As discussed in Part IV.C. special accommodations do not in and of themselves render a claimant disabled.

The ALJ provided substantial evidence in the record to support his conclusion that Claimant had less than marked limitations in the domain of attending and completing tasks.  Therefore, it is recommended that the ALJ's determination, that Claimant had less than marked limitations in the domain of attending and completing tasks, be upheld.

### E.  The Domain of Interacting and Relating with Others

This domain considers how well a claimant initiates and sustains emotional connections with others, develops and uses the language of his community, cooperates with others, complies with rules, responds to criticism, and respects and take cares of the possessions of others.  20 C.F.R. § 416.926a(i).  A preschooler should be able to socialize with children as well as adults; should begin to prefer playmates of his own age and start to develop friendships with children of the same age; should be able to use words instead of actions to express himself, and also be better able to share, show affection, and offer to help; should be able to relate to caregivers with increasing independence, choose his own friends, and play cooperatively with other children, one-at-a-time or in a group, without continual adult supervision; should be able to initiate and participate in conversations, using increasingly complex vocabulary and grammar, and speak clearly enough that both familiar and unfamiliar listeners can understand what he says most of the time.  *Id.* at 416.926a(i)(iii).  A school aged child should be able to develop more lasting friendships with children his own age; should begin to understand how to work in groups to create projects and solve problems; should have an increasing ability to understand another's point of view and to tolerate differences; should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner

that both familiar and unfamiliar listeners readily understand.  *Id.* at § 416.926a(i)(iv).

Examples of limitations in this domain include not reaching out to be picked up and held

by a caregiver; having no close friends, or friends are all older or younger; avoiding or

withdrawing from known people, or being overly anxious or fearful of meeting new

people or trying new experiences; difficulty playing games or sports with rules; difficulty

communicating with others; and difficulty speaking intelligibly or with adequate fluency.

*Id.* at § 416.926a(i)(3)(i)-(vi).

 The ALJ determined that Claimant had a marked limitation in the domain of

interacting and relating with others.  (T. 383.)  Plaintiff asserts that because the ALJ

relied on Claimant's CELF-4 test scores in determining he had a marked limitation in

this domain, the ALJ committed error in not relying on the same test score to determine

Claimant had marked limitations in the other domains.  (Dkt. No. 10 at 19-20 [Pl.'s Mem.

of Law].)

 To be sure, the ALJ relied on Claimant's CELF-4 test scores in determining he

had a marked limitation in this domain.  (T. 384.)  However, the ALJ also relied on the

opinion of Dr. Merechi that Claimant had marked social limitations.  (*Id.*, *referring to* T.

278, 299.)  As stated herein, testing scores alone are not dispositive of a marked or

extreme limitation.  20 C.F.R. § 416.926a(e)(3)(i).  In each domain the ALJ took into

consideration the evidence in the record, including testing scores and source opinions.

Here, as in the other domains, the ALJ provided substantial evidence in the record to

support his determination.  In the domain of interacting and relating with others, the ALJ

relied on Claimant's test scores in conjunction with Dr. Merechi's opinion.  Therefore,

the properly took into consideration the CELF-4 test score at the various domains.  It is

recommended that the ALJ's determination upheld.

### F.  The ALJ's Assessment of Plaintiff's Credibility

A plaintiff's allegations of pain and functional limitations are "entitled to great

weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*,

614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982

F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's]

subjective complaints without question; he may exercise discretion in weighing the

credibility of the [plaintiff's] testimony in light of the other evidence in the record."

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23,

27 (2d Cir.1979)).  "When rejecting subjective complaints, an ALJ must do so explicitly

and with sufficient specificity to enable the Court to decide whether there are legitimate

reasons for the ALJ's disbelief."  *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported

symptoms.  *See* 20 C.F.R. § 416.929.  First, the ALJ must determine whether, based on

the objective medical evidence, a plaintiff's medical impairments "could reasonably be

expected to produce the pain or other symptoms alleged."  *Id.* at § 416.929(a). Second,

if the medical evidence establishes the existence of such impairments, the ALJ must

evaluate the intensity, persistence, and limiting effects of those symptoms to determine

the extent to which the symptoms limit the claimant's ability to do work.  *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2)

the location, duration, frequency, and intensity of the claimant's pain or other symptoms;

(3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side

effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms.  20 C.F.R. § 416.929(c)(3)(i)-(vii).

The ALJ determined that Plaintiff's testimony regarding Claimant's limitations were "generally credible, and [was] not consistent with 'marked' or 'extreme' deficits in age-appropriate functioning."  (T. 378.)  Plaintiff contends, without further support, that the ALJ "failed to re-evaluate testimony of [Plaintiff]."  (Dkt. No. 10 at 17, 21 [Pl.'s Mem. of Law].)  A review of the record indicates that the ALJ properly evaluated Plaintiff's testimony.

Indeed, as outlined by the Defendant, the ALJ considered Plaintiff's testimony that Claimant had accommodations in school, and that his grades were "okay" for his condition.  (T. 381, *referring to* T. 400, 403-405.)  The ALJ noted that Plaintiff stated Claimant was "pretty good" with paying attention, and focusing on things.  (T. 382, *referring to* T. 405.)  The ALJ relied on Plaintiff's testimony that Claimant had friends, played with others, and had "typical" sibling relationships, but had "a little more difficulty" due to misunderstandings related to his hearing.  (T. 383-384, *referring to* T. 400-401.) The ALJ considered Plaintiff's testimony that Claimant generally got along well with adults with some language difficulties and when he had difficulty he would "keep trying to express whatever it is he's trying to express."  (T. 384, *repeated* T. 405-406.)

Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  Overall, the ALJ properly evaluated Plaintiff's testimony. It is therefore recommended that the ALJ's credibility determination be upheld.

### G.  Remand for Award of Benefits

Plaintiff asks the Court to direct a finding a disability and remand for calculation of benefits.  (Dkt. No. 10 at 22 [Pl.'s Mem. of Law].)  Here, for the reasons outlined above, the ALJ's determination was proper and supported by substantial evidence. Therefore, it is recommended that an award for benefits is not required.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:       October 18, 2017

William B. Mitchell Carter
U.S. Magistrate Judge